**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **ROBERT KNIGHT AND JOANN KNIGHT,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CASE NO: ________________** |
| **ALLSTATE LIFE INSURANCE COMPANY,** | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

Defendant Allstate Life Insurance Company ("Allstate") hereby files this Notice of Removal of this case from the 237th District Court of Lubbock County, Texas, Case No. 2018533201, where it is currently pending, to the United States District Court for the Northern District of Texas, Lubbock Division. This cause is removable pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Allstate respectfully shows the Court as follows:

1. Plaintiffs Robert and Joann Knight instituted this civil action in the 237th District Court of Lubbock County, Texas on November 29, 2018. A true and correct copy of all process and pleadings is attached hereto as Exhibit A and is incorporated herein by reference.

2. This action could have been originally filed in this Court pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds the jurisdictional minimum.

3. Allstate was served on December 6, 2018. This Removal is timely pursuant to Rule 6(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1446(b).

4. The United States District Court for the Northern District of Texas, Lubbock Division, is the federal district embracing the District Court of Lubbock County, Texas, where this suit was originally filed. Venue is therefore proper under 28 U.S.C. § 81(c)(2) and §1441(a).

**DIVERSITY OF CITIZENSHIP**

5. Plaintiffs are citizens and residents of Lubbock County, Texas. *See* Original Petition at p. 1.

6. Defendant Allstate Life Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Northbrook, Illinois. As a result, Allstate is not now, and was not at the time of the filing of the Original Petition, a citizen of the State of Texas within the meaning of the Acts of Congress relating to the removal of cases.

7. Diversity of citizenship is present because Plaintiffs are citizens of the State of Texas while Defendant Allstate is a citizen of the State of Illinois.

**AMOUNT IN CONTROVERSY**

8. In situations where the petition does not specify the amount in controversy, removal is proper if the removing party establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Felton v. Greyhound Lines, Inc.*, 324 F. 3d 771, 773 (5th Cir. 2003).

9. The removing party can satisfy that burden by showing that "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) by setting forth summary judgment type evidence of facts in controversy that support a finding of the

requisite amount." *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F. 3d 720, 723 (5th Cir. 2002).

10. In this case, Plaintiffs' Original Petition does not include a specific damages claim. However, a determination that the claims contained in the Original Petition are likely to exceed $75,000 is easily found here.

11. The Original Petition makes clear that both Plaintiffs are insured under the subject Long Term Care Policy (the "Policy") and that both Plaintiffs have made claims for benefits thereunder based on their admission to a long term care facility. *See* Original Petition at Sec. VI and VII, p. 2, attached as Exhibit B. Pursuant to the Policy, Nursing Home benefits are payable "for each day that you are confined in a Nursing Home, beginning with the first day after the Waiting Period has been satisfied . . . ." *See* Declaration of Janet Dever, at ¶4, Exhibit C. After factoring in cost of living increases, the Policy currently pays a daily benefit of $141.00 for each day an insured is confined to a Nursing Home. Dever Decl., at ¶5. So for both Plaintiffs, the Nursing Home benefit totals $282.00 each day. Based on their May 1, 2018 admission date alleged in the Original Petition, the current amount of Policy benefits at issue as of this day is $59,502.00 (adjusting for the 30 day Waiting Period).

12. Of course, as the Original Petition sets out, "damages continue as additional benefits are payable under the policy into the future . . . Plaintiffs seek an award of all benefits payable under the policy on an ongoing basis." Original Petition at Sec. XII, p. 5. In fact, at $282 per day, the total amount of benefits allegedly due under the Policy will exceed $75,000 by February 21, 2019. Such ongoing and future damages are properly included in any calculation of the amount in controversy. *See White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003)(finding amount in controversy met based on likelihood that ongoing damages would exceed $75,000 at

the time of trial); *Norvil v. DuPont Powder Coating USA, Inc.*, 2010 U.S. Dist. LEXIS 38907, *4-5.

13. The Original Petition also clearly seeks additional damages in the form of (1) mental anguish,[1] (2) attorney's fees[2] and (3) exemplary damages[3] that must be considered when determining the amount in controversy. Original Petition at Sec. XIII, p. 5

14. As a result, even if the value of future damages were not includable, the amount in controversy is nevertheless clearly met when considering the other types damages sought by Plaintiffs.

## **MISCELLANEOUS**

21. A copy of this Notice of Removal is being filed with the Clerk of the 237th District Court of Lubbock County, Texas, as provided by law, and written notice is being sent to Plaintiffs' counsel.

23. Defendant has sought no similar relief.

24. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

25. The allegations of the Notice are true and correct and within the jurisdiction of the United States District Court for the Northern District of Texas, and this cause is removable to the United States District Court for the Northern District of Texas.

26. If any question arises as to the propriety of the removal of this action, Defendant respectfully request the opportunity to present a brief and oral argument in support of its position.

---

[1] *See Nadeau v. Mentor Tex. L.P.*, 2005 U.S. Dist. LEXIS 13269, *6-7 (N.D. Tex.)(noting that mental anguish damages are properly included in amount in controversy calculation).

[2] Because Plaintiffs have asserted a breach of contract claim, attorneys' fees are recoverable in this case and are properly included in a calculation of the amount in controversy. *See Manguno*, 276 F.3d at 723.

[3] Exemplary damages allowed by statute and punitive damages are encompassed in the amount in controversy. *See U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279. 283 (5th Cir. 2001); *St Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

WHEREFORE, PREMESIS CONSIDERED, Defendant Allstate, by and through its counsel, desiring to remove this civil action to the United States District Court for the Northern District of Texas, Lubbock Division, being the district and division for the county in which such civil action is pending, prays that the filing of the Notice of Removal, the filing of written notice thereof to Plaintiffs, and the filing of a copy of this Notice of Removal with the clerk of the 237th District Court of Lubbock County, Texas shall effect the removal of said civil action to this Honorable Court.

Respectfully Submitted

BRESSLER, AMERY & ROSS, P.C.

By: */s/ Janell M. Ahnert*
Janell M. Ahnert
Texas State Bar No. 24099043

Counsel for Defendant
Allstate Life Insurance Company

**OF COUNSEL:**
David P. Donahue
BRESSLER, AMERY & ROSS, PC
2001 Park Place, Suite 1500
Birmingham, AL 35203
Tel: (205) 719-0400
Fax: (205) 719-0500
E-mail: jahnert@bressler.com
E-mail: ddonahue@bressler.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December, 2018, the foregoing document was filed electronically using the Court's CM/ECF system, and that is available for viewing and downloading. Further, all counsel of record have been served by electronic means and/or by U.S. Mail, postage prepaid and properly addressed, as follows:

J. Edwin Price, P.C.
2301 Broadway
Lubbock, TX 79401
Email: eprice1@nts-online.net

/s/ *Janell M. Ahnert*
**OF COUNSEL**

# EXHIBIT A

CT Corporation

**Service of Process Transmittal**
12/06/2018
CT Log Number 534523633

**TO:** L&R Home Office Intake Unit
Allstate Insurance Company
3075 Sanders Rd Ste G4A
Northbrook, IL 60062-7119

**RE:** **Process Served in Texas**

**FOR:** Allstate Life Insurance Company (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert Knight and Joann Knight, Pltfs. vs. Allstate Life Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Exhibit(s) |
| **COURT/AGENCY:** | 237th Judicial District Court Lubbock County, TX<br>Case # 2018533201 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/06/2018 at 13:36 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration of 20 days |
| **ATTORNEY(S) / SENDER(S):** | J.Edwin Price<br>2301 Broadway<br>Lubbock, TX 79401<br>806-747-5000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/06/2018, Expected Purge Date: 12/11/2018<br><br>Image SOP<br><br>Email Notification, L&R Home Office Intake Unit LawSOPIntakeUnitCT@allstate.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 |
| **TELEPHONE:** | 214-932-3601 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**CITATION**
**THE STATE OF TEXAS**

DELIVERED: 12 26 2018
by: JBH

TO: Allstate Life Insurance Company
AGENT: CT Corporation Systems
1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136

Defendant Greetings:

**NOTICE**

**You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk of the court who issued this citation by 10 o'clock a.m. on the Monday following the expiration of 20 (twenty) days after you have been served this citation and Plaintiff's Original Petition, a default judgment may be taken against you.**

Said **Plaintiff's Plaintiff's Original Petition** was filed in the **237th District Court** of Lubbock County, Texas, on **November 29, 2018**. The file number of said suit being Cause Number **2018533201**, and styled:

**Robert Knight and Joann Knight,**
***Plaintiff***
**V.**
**Allstate Life Insurance Company,**
***Defendant***

The nature of **Plaintiff's** demand is set out and shown by a true and correct copy of the **Plaintiff's Original Petition**, accompanying this citation, and made a part thereof.

Plaintiff is represented by:
**J.Edwin Price, 2301 Broadway, Lubbock, Texas 79401 806-747-5000**

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates hereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Lubbock County, Texas, this Thursday, November 29, 2018, at 11:27 AM.

Barbara Sucsy, District Clerk
237th District Court
P.O. Box 10536 (79408)
904 Broadway
Lubbock, Texas 79401

DISTRICT COURT OF LUBBOCK COUNTY, TEXAS

By Dora Bustos-Rivera Deputy
Dora Bustos-Rivera

Filed 11/29/2018 9:03 AM
Barbara Sucsy
District Clerk
Lubbock County, Texas

MK

NO. 2018533201

| | | |
|---|---|---|
| ROBERT KNIGHT AND JOANN KNIGHT | § | IN THE 237th DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | OF |
| | § | |
| ALLSTATE LIFE INSURANCE COMPANY | § | |
| | § | LUBBOCK COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Robert and JoAnn Knight, Plaintiffs, file this original petition against Allstate Life Insurance Company, Defendant, for the following reasons:

I.

Plaintiffs are individuals residing in Lubbock County, Texas.

Defendant is an insurance corporation doing business in Texas which may be served by serving CT Corporation Systems, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

II.

Discovery is expected to be conducted pursuant to T.R.C.P. 190.3 (Level 2).

III.

STATUTORY AUTHORITY

This suit is brought, in part, under the authority of Tex. Ins. Code art. 542.001 *et seq*. This suit also is brought, in part, under the authority of Tex. Bus. & Com. Code & 17.41 *et seq*. commonly known as the Deceptive Trade Practices-Consumer Protection Act and cited in this petition as the "DTPA".

IV.

NOTICE: CONDITIONS PRECEDENT

Notice of the claims made in this lawsuit, including Plaintiffs' specific complaints, the amount of actual damages sustained and the amount of attorney's fees and expenses incurred, was given in the

manner and form required by Tex. Ins. Code art. 542.055 and Tex. Bus. & Com. Code § 17.505 at least sixty (60) days before this lawsuit was filed.

V.

VENUE

Plaintiffs purchased this policy of insurance in Lubbock County, Texas, therefore the contract was formed in Lubbock County, Texas. Venue lies in Lubbock County, Texas..

VI.

THE INSURANCE POLICY

Plaintiffs purchased Long Term Care Insurance Certificate No. 998430962 from Defendant (Exhibit "A" attached). The policy insured Robert B. Knight and JoAnn Knight for daily benefits for expenses for long term care. At all times material to this action, the insurance policy was in full force and effect..

VII.

THE LOSS

On or about May 1, 2018, during the policy period, Robert and JoAnn Knight were admitted to a long term care facility on orders of their treating physician who found that they had chronic conditions affecting two or more activities of daily living. Plaintiffs gave notice of this loss, made the medical records available for inspection and otherwise complied with the terms of the policy.

VIII.

AMBIGUITY

Defendant claims that the term "Nursing Home" in the certificate of insurance is dispositive as to determining whether or not Defendant has to pay benefits under the insurance certificate purchased in 1991 by Plaintiffs. Plaintiffs would show that that term of the policy is merely descriptive and is historical in nature - i.e., assisted living centers did not exist or were not the norm in 1991..The definition

of "Nursing Home" in the policy is now met by the assisted living center where the Plaintiffs reside and the Defendant is simply employing semantics to try and avoid its responsibility to its policy holder, in violation of the Insurance Code, The DTPA and common decency. Allstate drafted the policy and any ambiguity should be construed against them - the Knights meet all of the conditions of the "Nursing Home" definition except it is now called an assisted living center. And, ironically, it will cost the Defendant LESS per month to pay for the assisted living center than a "Nursing Home". Text book bad faith.

IX.

ACTIONABLE CONDUCT

Defendant failed to evaluate and adjust Plaintiffs' claim for benefits in good faith and failed to deal fairly with Plaintiffs. Defendant failed and refused to evaluate the information and the surrounding facts choosing instead to hide behind the palpably incorrect assumptions and conclusions of its agents, employees and supervisor. In order to justify its claim denial, Defendant wrongfully refused to pay for assisted living. Defendant persisted and continues to persist in its denial of Plaintiffs' claims for benefits even though a person of ordinary prudence and care would have done otherwise.

X.

CAUSES OF ACTION

The facts stated in the preceding paragraphs give rise to the following causes of action:

(a) Breach of the duty of good faith and fair dealing. As a result of the relationship of the parties created by the nature of the policy of insurance and the parties' unequal bargaining power, Defendant owed and owes to Plaintiffs a duty to deal fairly and in good faith. Defendant has failed to deal in good faith. There was and is no reasonable basis for Defendant's denial of Plaintiffs' claims for the full benefits payable under the policy. Defendant's actions were and are unfair because Plaintiffs'

losses are the type of losses Defendant promised to pay. Defendant thus breached its duty to deal fairly and in good faith with Plaintiffs.

(b) Breach of contract. The conduct of Defendant constitutes a breach of the contract of insurance between Plaintiffs and Defendant. As a result of this breach, Plaintiffs have suffered damages and continue to suffer damages.

(c) Violations of the Texas Insurance Code. Defendant has engaged in the following practices in violation of the Texas Insurance Code: (1) Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims after liability under the insurance policy became reasonably clear; (2) Defendant has refused to pay a claim without conducting a reasonable investigation with respect to the claim. This conduct constitutes unfair settlement practices, as defined in § 542.003(b)4 & 5 of the Texas Insurance Code, which are actionable pursuant to § 542.060 of the Texas Insurance Code.

XI.

KNOWING CONDUCT

Defendant had an actual awareness that the denial of benefits under the policy was false, deceptive and unfair in that it received a letter from Plaintiffs' son describing the financial impact on Plaintiffs yet Defendant denied the claim anyway.

XII.

CAUSATION; ACTUAL DAMAGES

The conduct described above was a producing, proximate and direct cause of actual damages to Plaintiffs. These damages include, but are not limited to, the full benefits payable under the policy together with the out of pocket expenses incurred by Plaintiffs. These damages also include mental anguish and distress suffered by Plaintiffs. Plaintiffs seek prejudgment interest at the highest lawful rate. The amount of actual damages which should be awarded exceeds the minimum jurisdictional limits of

the Court. In addition, damages continue as additional benefits are payable under the policy into the future. Plaintiffs seek an award of all benefits payable under the policy on an ongoing basis.

XIII.

EXEMPLARY; STATUTORY DAMAGES

(a) Defendant's breach of the duty of good faith and fair dealing was intentional and the result of a conscious indifference to the rights and welfare of Plaintiffs. Further, Defendant's conduct was committed knowingly, that is, with an actual awareness of the unfair nature of the conduct giving rise to Plaintiffs' claims. The denial of Plaintiffs' claims was apparently part of a common plan, routine, scheme and design calculated to deny insurance benefits to policy holders. In order to punish Defendant and set an example and thereby prevent other policyholders from being treated in this manner, exemplary damages are necessary. Accordingly, Plaintiffs seek exemplary damages in an amount the jury deems appropriate to accomplish these goals. Alternatively, because of Defendant's knowing violation of law, Plaintiff seeks mandatory 18% interest pursuant to Tex. Ins. Code § 542.060.

XIV.

ATTORNEY'S FEES

Plaintiffs seek their attorney's fees as allowed by Tex. Ins. Code § 542.060.

XV.

REQUESTS FOR RELIEF

Plaintiffs ask that Defendant be cited according to law to appear and answer this lawsuit, and, after final trial, Plaintiffs seek the following relief:

(a) A judgment for all of Plaintiffs' actual damages and exemplary, or alternatively, statutory damages in the full amount allowed by law.

(b) A judgment for prejudgment and postjudgment interest in the highest amount allowed by law.

(c) A judgment for attorney's fees and costs of court.

(d) Such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

J. EDWIN PRICE, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone (806) 747-5000
Fax (806)553-6959
E-mail eprice1@nts-online.net

/s/ J. EDWIN PRICE

J. EDWIN PRICE
State Bar No. 16300300
ATTORNEY FOR PLAINTIFFS

EXHIBIT A

Longterm Care Insurance

Retain this Data Page for your Certificate of Insurance

## ALLSTATE LIFE INSURANCE COMPANY

### CERTIFICATE DATA PAGE

This Data Page is part of your certificate. It replaces any Data Page you may already have.

99843096? (as of 4/08/08)

CERTIFICATE NUMBER: ~~6440306110558~~ Robert B Knight — Insured and spouse
Joann Knight

EFFECTIVE DATE Dec. 24, 1991 ~~3229 62nd St~~
Lubbock , TX 79413

### SCHEDULE OF INSURANCE

Daily Benefits: Nursing Home Care-$ 50.00; Home Health Care-$ 25.00; Adult Day Care-$ 20.00.

Waiting Period Before Benefits Are Paid: Nursing Home, 30 Days of Confinement; Home Health Care, 30 Days of Visits; Adult Day Care, 30 Days of Care. Days of Care, Confinement and Visits which have been applied to satisfy a Waiting Period may be combined.

Maximum Lifetime Benefit per Insured Person: Nursing Home Care-seven years; Home Health Care-1,000 days; Adult Day Care-750 days.

Premiums are waived for periods of Nursing Home Confinement for which benefits are payable.

Insureds Ages at Enrollment: 60 & 61 Monthly Premium: $84.30

LGU9731

Tel 1-888-505-8744
Ext 72608

2624

CAUTION: The issuance of this long term care insurance certificate is based upon your responses to the questions on your enrollment. A copy of your enrollment is enclosed. If your answers are incorrect or untrue, the company has the right to deny benefits or rescind your coverage under this plan. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of your answers are incorrect, contact us at our Home Office.

LGU9731TX

Increases 7% a year

ALLSTATE LIFE INSURANCE COMPANY
HOME OFFICE - NORTHBROOK, ILLINOIS

## CERTIFICATE OF INSURANCE

Person(s) insured and SCHEDULE OF INSURANCE are shown on the CERTIFICATE DATA PAGE. Place the DATA PAGE with your CERTIFICATE for safe keeping.

### 30 DAY RIGHT TO EXAMINE CERTIFICATE

If you are not totally satisfied with this Insurance, for any reason, you may void it by sending back the Certificate of Insurance within 30 days after you receive it to Allstate Life Insurance Company at its Home Office. You will get a full refund of any premium paid.

This is a summary of the insurance Allstate Life Insurance Company (herein called "we" or "us") provides under Master Policy No. 64403061 (herein called "Policy") issued to Sears, Roebuck and Co. (herein called "Policyholder").

An Insured Person may qualify under one Certificate only. If any person is insured under more than one Certificate under the Policy, we will consider coverage under all Certificates after the first to be void. Upon discovery of the duplication of insurance, we will refund any duplicate premiums which may have been made on behalf of that person. The records kept by Allstate shall determine the insurance provided under the Policy for any Insured Person. Important provisions of the Policy are outlined below:

### LONG TERM CARE INSURANCE

### GUARANTEED RENEWABLE

If the required premiums for this coverage are paid when due, or within the grace period, the coverage provided under this Certificate will be renewed, subject to the Termination provision.

We reserve the right to change premium rates on a class basis. No such change shall take effect until the first renewal date following the date of the change.

Any change in the premium rate will be based on the original insuring ages and classes of risk of the Insured Persons.

### INDEX

AUTOMATIC BENEFIT INCREASES .......... 5
DEFINITIONS .......... 2
DESCRIPTION OF COVERAGE .......... 3
EXCLUSIONS AND LIMITATIONS .......... 4
GENERAL PROVISIONS .......... 5
TERMINATION .......... 5

THIS IS NOT A MEDICARE SUPPLEMENT POLICY. IT DOES NOT FULLY SUPPLEMENT FEDERAL MEDICARE HEALTH INSURANCE. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

CAUTION: The issuance of this long term care insurance certificate is based upon your responses to the questions on your enrollment. A copy of your enrollment is enclosed. If your answers are incorrect or untrue, the company has the right to deny benefits or rescind your coverage under this plan. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of your answers are incorrect, contact us at our Home Office.

LGU8731TX

Increased 7% a year

(2)

## DEFINITIONS

**Activities of Daily Living** are Bathing, Dressing, Eating, Mobility and Toileting as defined below:

- "Bathing" means turning on water faucets, setting temperature and water level, transferring into or out of tub/shower, washing the whole body, drying off completely, or emptying tub.
- "Dressing" means dressing self, including fasteners, braces, or prostheses.
- "Eating" means getting food or drink into the body for nourishment.
- "Mobility" means moving from one location to another, or the ability to get in and out of bed or a chair.
- "Toileting" means the ability to use the toilet, transfer on and off the toileting equipment or perform associated personal hygiene.

**Adult Day Care** means care for a Chronic Condition, which is provided in an Adult Day Care Facility, for at least four consecutive hours each day.

**Adult Day Care Facility** means a facility which operates during any part of a day, and which meets all of the following requirements:

1. If the jurisdiction in which the facility is located licenses Adult Day Care Facilities, then the facility must be licensed.
2. If licensing is not available in the jurisdiction in which the facility is located, the facility must: (a) provide necessary assistance for Activities of Daily Living; (b) maintain written records of services provided to each patient; (c) have a full-time administrator; and (d) offer at least one of the following services:
   - physical and restorative therapy;
   - planned therapeutic, social, and educational activities;
   - social services; such as case management and counseling;
   - nutritional services and counseling.

An Adult Day Care Facility does not include: (1) a hospital, except for a portion of a hospital specifically designated for use as an Adult Day Care Facility; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Chronic Condition** means a physical condition or Cognitive Impairment for which an Insured Person requires assistance with two or more of the Activities of Daily Living, as certified by a Doctor in a Plan of Care.

**Cognitive Impairment** means the inability to maintain self awareness, memory, or orientation as to time and place.

**Doctor** means a legally qualified physician, other than the Insured Person or a member of the Insured Person's Family.

**Effective Date** means the date coverage starts. This is shown on the Data Page.

**Family** means: (1) the Insured Person's spouse; or (2) the child, brother, sister, or parent of the Insured Person or spouse.

**Home Health Care** means care for a Chronic Condition that is provided by a Home Health Care Agency and is performed in accordance with the Plan of Care.

**Home Health Care Agency** means a public or private agency that specializes in giving nursing care, therapeutic services, or assistance with the Activities of Daily Living in the home, is legally authorized by the appropriate government agency in the state where the services are performed, or is Medicare-certified as a Home Health Care Agency, and operates within the scope of such authorization or certification.

**Insured** or **Insured Person** means each eligible person who is named on the enrollment form and whose coverage is in effect.

**Medicare** means Title XVIII of the United States Social Security Act of 1965, as then constituted or as later amended.

**Necessary Care** means care or services for Chronic Condition which could not be omitted without adversely affecting the Insured Person's health, physical condition, or well-being.

3

**Nursing Home** means a facility which: (1) is licensed by the state in which the facility is located to provide care for sick and injured persons at their expense; (2) provides 24 hour care by or under the supervision of a Doctor, registered graduate professional nurse (RN), licensed practical nurse (LPN), or a licensed vocational nurse (LVN); and (3) maintains daily medical records for each patient.

A Nursing Home does not include: (1) a hospital, except for a portion of a hospital specifically designated for use as a Nursing Home; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Plan of Care** means a written program for specified Nursing Home Care, Home Health Care, or Adult Day Care services on a form prepared by us, which includes, but is not limited to, findings by the Insured Person's Doctor that the care is: (1) consistent with the Doctor's diagnosis; (2) in accordance with commonly accepted medical and nursing standards; and (3) Necessary Care.

**Pre-existing Condition** means an illness, disease or condition for which an Insured Person has received diagnosis, medical treatment or advice from a provider of health care services during the six months prior to the Effective Date of coverage.

**Waiting Period** as shown in the Schedule of Insurance means the applicable number of days of a Nursing Home confinement, number of days of Home Health Care visits, or number of days of Adult Day Care visits which must be satisfied before benefits are payable. If any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care is: (1) immediately preceded, within 6 months by the other; and (2) due to the same or related cause; the total number of days of Home Health Care visits, days of Adult Day Care, and days of Nursing Home confinement will be combined toward satisfying the Waiting Period.

## DESCRIPTION OF COVERAGE

### NURSING HOME CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you are confined in a Nursing Home beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Nursing Home Care shown in the Schedule of Insurance.

The Nursing Home confinement must: (1) Be for a covered Chronic Condition; (2) Be recommended by your Doctor in a Plan of Care; and (3) Begin while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Nursing Home confinements due to the same or related cause that are separated by less than six months.

### HOME HEALTH CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you receive covered Home Health Care beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Home Health Care shown in the Schedule of Insurance.

The Home Health Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3) Care which is provided while the your coverage under the Policy is in force.

No new Waiting Period is required for recurring Home Health Care visits due to the same or related cause that are separated by less than six months.

### ADULT DAY CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you stay for at least four hours in an Adult Day Care Facility beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Adult Day Care shown in the Schedule of Insurance.

The Adult Day Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3) Care which is provided while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Adult Day Care visits due to the same or related cause that are separated by less than six months.

8 10

(4)

PLAN OF CARE

Before any benefits are payable, we must receive and approve a Plan of Care. We have the right to request and review a subsequent Plan of Care as often as we deem necessary. We also reserve the right to evaluate medical information against professional standards of care and pay any benefit accordingly. We may also suggest alternative care when deemed appropriate, in accordance with the Case Management Provision.

CASE MANAGEMENT PROVISION

On a case by case basis, we may, at our option, and with the concurrence of you and your Doctor, recommend and pay for Necessary Care not otherwise covered by the policy. However, we will not pay an amount greater than would be otherwise payable under the policy. Any amount paid will be applied to reduce the daily benefit and lifetime maximum as determined by us.

NURSING HOME WAIVER OF PREMIUM

Premiums will be waived for periods of Nursing Home confinement for which benefits are payable.

EXCLUSIONS AND LIMITATIONS

EXCLUSIONS

The policy does not pay benefits for Chronic Conditions caused by or resulting from: (1) alcohol or drug addiction; (2) mental disease or disorder (except for Alzheimer's Disease and (SDAT) Senile Dementia of the Alzheimer's Type); (3) attempted suicide, or intentionally self-inflicted injury; or (4) war, declared or undeclared, or any act thereof.

The Policy does not cover: (1) confinements in government facilities unless a charge is made for which the Insured Person is obligated to pay; (2) any Nursing Home confinement, Home Health Care visit, or Adult Day Care visit for which no charge would be made to the Insured Person in the absence of insurance; or (3) Nursing Home confinements, Home Health Care visits, or Adult Day Care visits outside of the United States.

PRE-EXISTING CONDITION LIMITATION

The Policy does not pay benefits for any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care which begins during the first six months following the Effective Date of your coverage if it is due to a Pre-existing Condition.

MULTIPLE COVERAGE

No person may be covered under more than one Allstate Life Insurance Company policy providing Nursing Home, Home Health Care or Adult Day Care benefits. If any person is insured under more than one such policy, benefits will be payable only under the policy with the latest Effective Date.

However, if within 31 days of the latest Effective Date shown, you have changed to coverage under that policy from any other Allstate Life Insurance Company policy providing Nursing Home, Home Health Care, or Adult Day Care benefits, the following will apply:

Benefits for any care or services not covered due to the Pre-existing Condition Limitation will be determined as if coverage under the prior policy was still in effect. But no benefits will be paid under the later policy for any day of stay or visit for which a benefit is payable for coverage under the prior policy.

# EXHIBIT B

Filed 11/29/2018 9:03 AM
Barbara Sucsy
District Clerk
Lubbock County, Texas

MK

NO. 2018533201

| | | |
|---|---|---|
| ROBERT KNIGHT AND JOANN KNIGHT | § | IN THE 237th DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | OF |
| | § | |
| ALLSTATE LIFE INSURANCE COMPANY | § | |
| | § | LUBBOCK COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Robert and JoAnn Knight, Plaintiffs, file this original petition against Allstate Life Insurance Company, Defendant, for the following reasons:

I.

Plaintiffs are individuals residing in Lubbock County, Texas.

Defendant is an insurance corporation doing business in Texas which may be served by serving CT Corporation Systems, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

II.

Discovery is expected to be conducted pursuant to T.R.C.P. 190.3 (Level 2).

III.

### STATUTORY AUTHORITY

This suit is brought, in part, under the authority of Tex. Ins. Code art. 542.001 *et seq*. This suit also is brought, in part, under the authority of Tex. Bus. & Com. Code & 17.41 *et seq*. commonly known as the Deceptive Trade Practices-Consumer Protection Act and cited in this petition as the "DTPA".

IV.

### NOTICE: CONDITIONS PRECEDENT

Notice of the claims made in this lawsuit, including Plaintiffs' specific complaints, the amount of actual damages sustained and the amount of attorney's fees and expenses incurred, was given in the

manner and form required by Tex. Ins. Code art. 542.055 and Tex. Bus. & Com. Code § 17.505 at least sixty (60) days before this lawsuit was filed.

V.

VENUE

Plaintiffs purchased this policy of insurance in Lubbock County, Texas, therefore the contract was formed in Lubbock County, Texas. Venue lies in Lubbock County, Texas..

VI.

THE INSURANCE POLICY

Plaintiffs purchased Long Term Care Insurance Certificate No. 998430962 from Defendant (Exhibit "A" attached). The policy insured Robert B. Knight and JoAnn Knight for daily benefits for expenses for long term care. At all times material to this action, the insurance policy was in full force and effect..

VII.

THE LOSS

On or about May 1, 2018, during the policy period, Robert and JoAnn Knight were admitted to a long term care facility on orders of their treating physician who found that they had chronic conditions affecting two or more activities of daily living. Plaintiffs gave notice of this loss, made the medical records available for inspection and otherwise complied with the terms of the policy.

VIII.

AMBIGUITY

Defendant claims that the term "Nursing Home" in the certificate of insurance is dispositive as to determining whether or not Defendant has to pay benefits under the insurance certificate purchased in 1991 by Plaintiffs. Plaintiffs would show that that term of the policy is merely descriptive and is historical in nature.- i.e., assisted living centers did not exist or were not the norm in 1991..The definition

of "Nursing Home" in the policy is now met by the assisted living center where the Plaintiffs reside and the Defendant is simply employing semantics to try and avoid its responsibility to its policy holder, in violation of the Insurance Code, The DTPA and common decency. Allstate drafted the policy and any ambiguity should be construed against them - the Knights meet all of the conditions of the "Nursing Home" definition except it is now called an assisted living center. And, ironically, it will cost the Defendant LESS per month to pay for the assisted living center than a "Nursing Home". Text book bad faith.

IX.

ACTIONABLE CONDUCT

Defendant failed to evaluate and adjust Plaintiffs' claim for benefits in good faith and failed to deal fairly with Plaintiffs. Defendant failed and refused to evaluate the information and the surrounding facts choosing instead to hide behind the palpably incorrect assumptions and conclusions of its agents, employees and supervisor. In order to justify its claim denial, Defendant wrongfully refused to pay for assisted living. Defendant persisted and continues to persist in its denial of Plaintiffs' claims for benefits even though a person of ordinary prudence and care would have done otherwise.

X.

CAUSES OF ACTION

The facts stated in the preceding paragraphs give rise to the following causes of action:

(a) Breach of the duty of good faith and fair dealing. As a result of the relationship of the parties created by the nature of the policy of insurance and the parties' unequal bargaining power, Defendant owed and owes to Plaintiffs a duty to deal fairly and in good faith. Defendant has failed to deal in good faith. There was and is no reasonable basis for Defendant's denial of Plaintiffs' claims for the full benefits payable under the policy. Defendant's actions were and are unfair because Plaintiffs'

losses are the type of losses Defendant promised to pay. Defendant thus breached its duty to deal fairly and in good faith with Plaintiffs.

(b) Breach of contract. The conduct of Defendant constitutes a breach of the contract of insurance between Plaintiffs and Defendant. As a result of this breach, Plaintiffs have suffered damages and continue to suffer damages.

(c) Violations of the Texas Insurance Code. Defendant has engaged in the following practices in violation of the Texas Insurance Code: (1) Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims after liability under the insurance policy became reasonably clear; (2) Defendant has refused to pay a claim without conducting a reasonable investigation with respect to the claim. This conduct constitutes unfair settlement practices, as defined in § 542.003(b)4 & 5 of the Texas Insurance Code, which are actionable pursuant to § 542.060 of the Texas Insurance Code.

XI.

KNOWING CONDUCT

Defendant had an actual awareness that the denial of benefits under the policy was false, deceptive and unfair in that it received a letter from Plaintiffs' son describing the financial impact on Plaintiffs yet Defendant denied the claim anyway.

XII.

CAUSATION; ACTUAL DAMAGES

The conduct described above was a producing, proximate and direct cause of actual damages to Plaintiffs. These damages include, but are not limited to, the full benefits payable under the policy together with the out of pocket expenses incurred by Plaintiffs. These damages also include mental anguish and distress suffered by Plaintiffs. Plaintiffs seek prejudgment interest at the highest lawful rate. The amount of actual damages which should be awarded exceeds the minimum jurisdictional limits of

the Court. In addition, damages continue as additional benefits are payable under the policy into the future. Plaintiffs seek an award of all benefits payable under the policy on an ongoing basis.

XIII.

EXEMPLARY; STATUTORY DAMAGES

(a) Defendant's breach of the duty of good faith and fair dealing was intentional and the result of a conscious indifference to the rights and welfare of Plaintiffs. Further, Defendant's conduct was committed knowingly, that is, with an actual awareness of the unfair nature of the conduct giving rise to Plaintiffs' claims. The denial of Plaintiffs' claims was apparently part of a common plan, routine, scheme and design calculated to deny insurance benefits to policy holders. In order to punish Defendant and set an example and thereby prevent other policyholders from being treated in this manner, exemplary damages are necessary. Accordingly, Plaintiffs seek exemplary damages in an amount the jury deems appropriate to accomplish these goals. Alternatively, because of Defendant's knowing violation of law, Plaintiff seeks mandatory 18% interest pursuant to Tex. Ins. Code § 542.060.

XIV.

ATTORNEY'S FEES

Plaintiffs seek their attorney's fees as allowed by Tex. Ins. Code § 542.060.

XV.

REQUESTS FOR RELIEF

Plaintiffs ask that Defendant be cited according to law to appear and answer this lawsuit, and, after final trial, Plaintiffs seek the following relief:

(a) A judgment for all of Plaintiffs' actual damages and exemplary, or alternatively, statutory damages in the full amount allowed by law.

(b) A judgment for prejudgment and postjudgment interest in the highest amount allowed by law.

(c) A judgment for attorney's fees and costs of court.

(d) Such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

J. EDWIN PRICE, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone (806) 747-5000
Fax (806)553-6959
E-mail eprice1@nts-online.net

/s/ J. EDWIN PRICE

J. EDWIN PRICE
State Bar No. 16300300
ATTORNEY FOR PLAINTIFFS

EXHIBIT A

Longterm Care Insurance

Retain this Data Page for your Certificate of Insurance

**ALLSTATE LIFE INSURANCE COMPANY**

CERTIFICATE DATA PAGE

This Data Page is part of your certificate. It replaces any Data Page you may already have.

99843096? (as of 4/08/08)

CERTIFICATE NUMBER: ~~6440306110558~~ Robert B Knight Joann Knight — Insured and spouse

EFFECTIVE DATE Dec. 24, 1991 ~~3229 62nd St~~ Lubbock, TX 79413

SCHEDULE OF INSURANCE

Daily Benefits: Nursing Home Care-$ 50.00; Home Health Care-$ 25.00; Adult Day Care-$ 20.00.

Waiting Period Before Benefits Are Paid: Nursing Home, 30 Days of Confinement; Home Health Care, 30 Days of Visits; Adult Day Care, 30 Days of Care. Days of Care, Confinement and Visits which have been applied to satisfy a Waiting Period may be combined.

Maximum Lifetime Benefit per Insured Person: Nursing Home Care-seven years; Home Health Care-1,000 days; Adult Day Care-750 days.

Premiums are waived for periods of Nursing Home Confinement for which benefits are payable.

Insureds Ages at Enrollment: 60 & 61 Monthly Premium: $84.30

LGU9731

Tel 1-888-505-8744

Ext 7608

2624

CAUTION: The issuance of this long term care insurance certificate is based upon your responses to the questions on your enrollment. A copy of your enrollment is enclosed. If your answers are incorrect or untrue, the company has the right to deny benefits or rescind your coverage under this plan. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of your answers are incorrect, contact us at our Home Office.

LGU9731TX

Increased 7% a year

ALLSTATE LIFE INSURANCE COMPANY
HOME OFFICE - NORTHBROOK, ILLINOIS

CERTIFICATE OF INSURANCE

Person(s) insured and SCHEDULE OF INSURANCE are shown on the CERTIFICATE DATA PAGE. Place the DATA PAGE with your CERTIFICATE for safe keeping.

**30 DAY RIGHT TO EXAMINE CERTIFICATE**

If you are not totally satisfied with this insurance, for any reason, you may void it by sending back the Certificate of Insurance within 30 days after you receive it to Allstate Life Insurance Company at its Home Office. You will get a full refund of any premium paid.

This is a summary of the insurance Allstate Life Insurance Company (herein called "we" or "us") provides under Master Policy No. 64403061 (herein called "Policy") issued to Sears, Roebuck and Co. (herein called "Policyholder").

An Insured Person may qualify under one Certificate only. If any person is insured under more than one Certificate under the Policy, we will consider coverage under all Certificates after the first to be void. Upon discovery of the duplication of insurance, we will refund any duplicate premiums which may have been made on behalf of that person. The records kept by Allstate shall determine the insurance provided under the Policy for any Insured Person. Important provisions of the Policy are outlined below:

LONG TERM CARE INSURANCE

GUARANTEED RENEWABLE

If the required premiums for this coverage are paid when due, or within the grace period, the coverage provided under this Certificate will be renewed, subject to the Termination provision.

We reserve the right to change premium rates on a class basis. No such change shall take effect until the first renewal date following the date of the change.

Any change in the premium rate will be based on the original insuring ages and classes of risk of the Insured Persons.

INDEX


AUTOMATIC BENEFIT INCREASES ........ 5
DEFINITIONS ........ 2
DESCRIPTION OF COVERAGE ........ 3
EXCLUSIONS AND LIMITATIONS ........ 4
GENERAL PROVISIONS ........ 5
TERMINATION ........ 5


THIS IS NOT A MEDICARE SUPPLEMENT POLICY. IT DOES NOT FULLY SUPPLEMENT FEDERAL MEDICARE HEALTH INSURANCE. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

CAUTION: The issuance of this long term care insurance certificate is based upon your responses to the questions on your enrollment. A copy of your enrollment is enclosed. If your answers are incorrect or untrue, the company has the right to deny benefits or rescind your coverage under this plan. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of your answers are incorrect, contact us at our Home Office.

LGU8731TX

Increased 7% a year

2

## DEFINITIONS

**Activities of Daily Living** are Bathing, Dressing, Eating, Mobility and Toileting as defined below:

- "Bathing" means turning on water faucets, setting temperature and water level, transferring into or out of tub/shower, washing the whole body, drying off completely, or emptying tub.
- "Dressing" means dressing self, including fasteners, braces, or prostheses.
- "Eating" means getting food or drink into the body for nourishment.
- "Mobility" means moving from one location to another, or the ability to get in and out of bed or a chair.
- "Toileting" means the ability to use the toilet, transfer on and off the toileting equipment or perform associated personal hygiene.

**Adult Day Care** means care for a Chronic Condition, which is provided in an Adult Day Care Facility, for at least four consecutive hours each day.

**Adult Day Care Facility** means a facility which operates during any part of a day, and which meets all of the following requirements:

1. If the jurisdiction in which the facility is located licenses Adult Day Care Facilities, then the facility must be licensed.
2. If licensing is not available in the jurisdiction in which the facility is located, the facility must: (a) provide necessary assistance for Activities of Daily Living; (b) maintain written records of services provided to each patient; (c) have a full-time administrator; and (d) offer at least one of the following services:
   - physical and restorative therapy;
   - planned therapeutic, social, and educational activities;
   - social services, such as case management and counseling;
   - nutritional services and counseling.

An Adult Day Care Facility does not include: (1) a hospital, except for a portion of a hospital specifically designated for use as an Adult Day Care Facility; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Chronic Condition** means a physical condition or Cognitive Impairment for which an Insured Person requires assistance with two or more of the Activities of Daily Living, as certified by a Doctor in a Plan of Care.

**Cognitive Impairment** means the inability to maintain self awareness, memory, or orientation as to time and place.
(Alzheimer's/dementia as of 4/08 conversation) (08/08)

**Doctor** means a legally qualified physician, other than the Insured Person or a member of the Insured Person's Family.

**Effective Date** means the date coverage starts. This is shown on the Data Page.

**Family** means: (1) the Insured Person's spouse; or (2) the child, brother, sister, or parent of the Insured Person or spouse.

**Home Health Care** means care for a Chronic Condition that is provided by a Home Health Care Agency and is performed in accordance with the Plan of Care.

**Home Health Care Agency** means a public or private agency that specializes in giving nursing care, therapeutic services, or assistance with the Activities of Daily Living in the home, is legally authorized by the appropriate government agency in the state where the services are performed, or is Medicare-certified as a Home Health Care Agency, and operates within the scope of such authorization or certification.

**Insured or Insured Person** means each eligible person who is named on the enrollment form and whose coverage is in effect.

**Medicare** means Title XVIII of the United States Social Security Act of 1965, as then constituted or as later amended.

**Necessary Care** means care or services for Chronic Condition which could not be omitted without adversely affecting the Insured Person's health, physical condition, or well-being.

(3)

**Nursing Home** means a facility which: (1) is licensed by the state in which the facility is located to provide care for sick and injured persons at their expense; (2) provides 24 hour care by or under the supervision of a Doctor, registered graduate professional nurse (RN), licensed practical nurse (LPN), or a licensed vocational nurse (LVN); and (3) maintains daily medical records for each patient.

A Nursing Home does not include: (1) a hospital; except for a portion of a hospital specifically designated for use as a Nursing Home; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Plan of Care** means a written program for specified Nursing Home Care, Home Health Care, or Adult Day Care services on a form prepared by us, which includes, but is not limited to, findings by the Insured Person's Doctor that the care is: (1) consistent with the Doctor's diagnosis; (2) in accordance with commonly accepted medical and nursing standards; and (3) Necessary Care.

**Pre-existing Condition** means an illness, disease or condition for which an Insured Person has received diagnosis, medical treatment or advice from a provider of health care services during the six months prior to the Effective Date of coverage.

**Waiting Period** as shown in the Schedule of Insurance means the applicable number of days of a Nursing Home confinement, number of days of Home Health Care visits, or number of days of Adult Day Care visits which must be satisfied before benefits are payable. If any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care is: (1) immediately preceded within 6 months by the other; and (2) due to the same or related cause; the total number of days of Home Health Care visits, days of Adult Day Care, and days of Nursing Home confinement will be combined toward satisfying the Waiting Period.

**DESCRIPTION OF COVERAGE**

NURSING HOME CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you are confined in a Nursing Home beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Nursing Home Care shown in the Schedule of Insurance.

The Nursing Home confinement must: (1) Be for a covered Chronic Condition; (2) Be recommended by your Doctor in a Plan of Care; and (3) Begin while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Nursing Home confinements due to the same or related cause that are separated by less than six months.

HOME HEALTH CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you receive covered Home Health Care beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Home Health Care shown in the Schedule of Insurance.

The Home Health Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3) Care which is provided while the your coverage under the Policy is in force.

No new Waiting Period is required for recurring Home Health Care visits due to the same or related cause that are separated by less than six months.

ADULT DAY CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you stay for at least four hours in an Adult Day Care Facility beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Adult Day Care shown in the Schedule of Insurance.

The Adult Day Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3) Care which is provided while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Adult Day Care visits due to the same or related cause that are separated by less than six months.

8 90

(4)

PLAN OF CARE

Before any benefits are payable, we must receive and approve a Plan of Care. We have the right to request and review a subsequent Plan of Care as often as we deem necessary. We also reserve the right to evaluate medical information against professional standards of care and pay any benefit accordingly. We may also suggest alternative care when deemed appropriate, in accordance with the Case Management Provision.

CASE MANAGEMENT PROVISION

On a case by case basis, we may, at our option, and with the concurrence of you and your Doctor, recommend and pay for Necessary Care not otherwise covered by the policy. However, we will not pay an amount greater than would be otherwise payable under the policy. Any amount paid will be applied to reduce the daily benefit and lifetime maximum as determined by us.

NURSING HOME WAIVER OF PREMIUM

Premiums will be waived for periods of Nursing Home confinement for which benefits are payable.

EXCLUSIONS AND LIMITATIONS

EXCLUSIONS

The policy does not pay benefits for Chronic Conditions caused by or resulting from: (1) alcohol or drug addiction; (2) mental disease or disorder (except for Alzheimer's Disease and (SDAT) Senile Dementia of the Alzheimer's Type); (3) attempted suicide, or intentionally self-inflicted injury; or (4) war, declared or undeclared, or any act thereof.

The Policy does not cover: (1) confinements in government facilities unless a charge is made for which the Insured Person is obligated to pay; (2) any Nursing Home confinement, Home Health Care visit, or Adult Day Care visit for which no charge would be made to the Insured Person in the absence of insurance; or (3) Nursing Home confinements, Home Health Care visits, or Adult Day Care visits outside of the United States.

PRE-EXISTING CONDITION LIMITATION

The Policy does not pay benefits for any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care which begins during the first six months following the Effective Date of your coverage if it is due to a Pre-existing Condition.

MULTIPLE COVERAGE

No person may be covered under more than one Allstate Life Insurance Company policy providing Nursing Home, Home Health Care or Adult Day Care benefits. If any person is insured under more than one such policy, benefits will be payable only under the policy with the latest Effective Date.

However, if within 31 days of the latest Effective Date shown, you have changed to coverage under that policy from any other Allstate Life Insurance Company policy providing Nursing Home, Home Health Care, or Adult Day Care benefits, the following will apply:

Benefits for any care or services not covered due to the Pre-existing Condition Limitation will be determined as if coverage under the prior policy was still in effect. But no benefits will be paid under the later policy for any day of stay or visit for which a benefit is payable for coverage under the prior policy.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **ROBERT KNIGHT AND JOANN KNIGHT,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CASE NO: ________________** |
| **ALLSTATE LIFE INSURANCE COMPANY,** | ) | |
| **Defendant.** | ) | |

**DECLARATION OF JANET L. DEVER**

I, Janet L. Dever, having been duly sworn, state as follows:

1. My name is Janet L. Dever. I am over the age of eighteen and am competent to make the statements in this Declaration.

2. I am employed by Allstate Life Insurance Company as Senior Manager of Life Claims. In this capacity, I have access to company records related to and personal knowledge of the matters set forth below.

3. A true copy of the Allstate Life Insurance Company Long Term Care insurance certificate number 998430962, insuring Robert B. Knight and Joann Knight, is attached as Exhibit 1 hereto, (the "Policy").

4. Pursuant to the Policy, Nursing Home benefits are payable "for each day that you are confined in a Nursing Home, beginning with the first day after the Waiting Period has been satisfied . . . .". Ex. 1 at p. 3.

5. At the time the subject claim was submitted by Robert and Joann Knight and through today, the daily benefit for nursing home care is $141.00 per insured for a maximum period of seven years. The daily benefit includes an annual cost of living increase of 7%.

6. Based upon my review and knowledge of Allstate's business practices, the records attached as Exhibit 1were made at or near the time of the events they record by a person with knowledge of the events. Further, the records were kept by Allstate in the ordinary course of Allstate's business and it was the regular practice of Allstate to create and maintain such records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of December, 2018 in Northbrook, Illinois.

Janet L. Dever

# EXHIBIT 1

If you are not totally satisfied with this insurance, for any reason, you may void it by sending back the Certificate of Insurance within 30 days after you receive it to Allstate Life Insurance Company at its Home Office. You will get a full refund of any premium paid.

This is a summary of the insurance Allstate Life Insurance Company (herein called " we" or "us") provides under Master Policy No. 64403061 (herein called "Policy") issued to Sears, Roebuck and Co. (herein called "Policyholder").

An Insured Person may qualify under one Certificate only. If any person is insured under more than one Certificate under the Policy, we will consider coverage under all Certificates after the first to be void. Upon discovery of the duplication of insurance, we will refund any duplicate premiums which may have been made on behalf of that person. The records kept by Allstate shall determine the insurance provided under the Policy for any Insured Person. Important provisions of the Policy are outlined below:

**LONG TERM CARE INSURANCE**

GUARANTEED RENEWABLE

If the required premiums for this coverage are paid when due, or within the grace period, the coverage provided under this Certificate will be renewed, subject to the Termination provision.

We reserve the right to change premium rates on a class basis. No such change shall take effect until the first renewal date following the date of the change.

Any change in the premium rate will be based on the original Insuring ages and classes of risk of the Insured Persons.

INDEX

AUTOMATIC BENEFIT INCREASES .......... 5
DEFINITIONS .......... 2
DESCRIPTION OF COVERAGE .......... 3
EXCLUSIONS AND LIMITATIONS .......... 4
GENERAL PROVISIONS .......... 5
TERMINATION .......... 5

THIS IS NOT A MEDICARE SUPPLEMENT POLICY. IT DOES NOT FULLY SUPPLEMENT FEDERAL MEDICARE HEALTH INSURANCE. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

CAUTION: The issuance of this long term care insurance certificate is based upon your responses to the questions on your enrollment. A copy of your enrollment is enclosed. If your answers are incorrect or untrue, the company has the right to deny benefits or rescind your coverage under this plan. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of your answers are incorrect, contact us at our Home Office.

LGU9731C

## DEFINITIONS

**Activities of Daily Living** are *Bathing*, *Dressing*, *Eating*, *Mobility* and *Toileting* as defined below:

- "Bathing" means turning on water faucets, setting temperature and water level, transferring into or out of tub/shower, washing the whole body, drying off completely, or emptying tub.
- "Dressing" means dressing self, including fasteners, braces, or prostheses.
- "Eating" means getting food or drink into the body for nourishment.
- "Mobility" means moving from one location to another, or the ability to get in and out of bed or a chair.
- "Toileting" means the ability to use the toilet, transfer on and off the toileting equipment or perform associated personal hygiene.

**Adult Day Care** means care for a Chronic Condition, which is provided in an Adult Day Care Facility, for at least four consecutive hours each day.

**Adult Day Care Facility** *means a facility which operates during any part of a day, and which meets all of the following requirements:*

1. If the jurisdiction in which the facility is located licenses Adult Day Care Facilities, then the facility must be licensed.
2. If licensing is not available in the jurisdiction in which the facility is located, the facility must: (a) provide necessary assistance for Activities of Daily Living; (b) maintain written records of services provided to each patient; (c) have a full-time administrator; and (d) offer at least one of the following services:
   - physical and restorative therapy;
   - planned therapeutic, social, and educational activities;
   - social services, such as case management and counseling;
   - nutritional services and counseling.

*An Adult Day Care Facility does not include: (1) a hospital, except for a portion of a hospital specifically designated* for use as an Adult Day Care Facility; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Chronic Condition** means a physical condition or Cognitive Impairment for which an Insured Person requires assistance with two or more of the Activities of Daily Living, as certified by a Doctor in a Plan of Care.

**Cognitive Impairment** means the inability to maintain self awareness, memory, or orientation as to time and place.

**Doctor** means a legally qualified physician, other than the Insured Person or a member of the Insured Person's Family.

**Effective Date** means the date coverage starts. This is shown on the Data Page.

**Family** means: (1) the Insured Person's spouse; or (2) the child, brother, sister, or parent of the Insured Person or spouse.

**Home Health Care** means care for a Chronic Condition that is provided by a Home Health Care Agency and is performed in accordance with the Plan of Care.

**Home Health Care Agency** means a public or private agency that specializes in giving nursing care, therapeutic services, or assistance with the Activities of Daily Living in the home, is legally authorized by the appropriate government agency in the state where the services are performed, or is Medicare-certified as a Home Health Care Agency, and operates within the scope of such authorization or certification.

**Insured or Insured Person** means each eligible person who is named on the enrollment form and whose coverage is in effect.

**Medicare** means Title XVIII of the United States Social Security Act of 1965, as then constituted or as later amended.

**Necessary Care** means care or services for Chronic Condition which could not be omitted without adversely affecting the Insured Person's health, physical condition, or well-being.

**Nursing Home** means a facility which: (1) is licensed by the state in which the facility is located to provide care for sick and injured persons at their expense; (2) provides 24 hour care by or under the supervision of a Doctor, registered graduate professional nurse (RN), licensed practical nurse (LPN), or a licensed vocational nurse (LVN); and (3) maintains daily medical records for each patient.

A Nursing Home does not include: (1) a hospital, except for a portion of a hospital specifically designated for use as a Nursing Home; (2) a place that is primarily for the treatment of mental illness, drug addiction, or alcoholism; or (3) a place owned or operated by the Insured Person or a member of the Insured Person's Family.

**Plan of Care** means a written program for specified Nursing Home Care, Home Health Care, or Adult Day Care services on a form prepared by us, which includes, but is not limited to, findings by the Insured Person's Doctor that the care is: (1) consistent with the Doctor's diagnosis; (2) in accordance with commonly accepted medical and nursing standards; and (3) Necessary Care.

**Pre-existing Condition** means an illness, disease or condition for which an Insured Person has received diagnosis, medical treatment or advice from a provider of health care services during the six months prior to the Effective Date of coverage.

**Waiting Period** as shown in the Schedule of Insurance means the applicable number of days of a Nursing Home confinement, number of days of Home Health Care visits, or number of days of Adult Day Care visits which must be satisfied before benefits are payable. If any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care is: (1) immediately preceded within 6 months by the other; and (2) due to the same or related cause, the total number of days of Home Health Care visits, days of Adult Day Care, and days of Nursing Home confinement will be combined toward satisfying the Waiting Period.

## DESCRIPTION OF COVERAGE

### NURSING HOME CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you are confined in a Nursing Home beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Nursing Home Care shown in the Schedule of Insurance.

The Nursing Home confinement must: (1) Be for a covered Chronic Condition; (2) Be recommended by your Doctor in a Plan of Care; and (3) Begin while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Nursing Home confinements due to the same or related cause that are separated by less than six months.

### HOME HEALTH CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you receive covered Home Health Care beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Home Health Care shown in the Schedule of Insurance.

The Home Health Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3),Care which is provided while the your coverage under the Policy is in force.

No new Waiting Period is required for recurring Home Health Care visits due to the same or related cause that are separated by less than six months.

### ADULT DAY CARE BENEFIT

We will pay the applicable Daily Benefit for each day that you stay for at least four hours in an Adult Day Care Facility beginning with the first day after the Waiting Period has been satisfied, up to the Maximum Lifetime Benefit for Adult Day Care shown in the Schedule of Insurance.

The Adult Day Care must be: (1) For a covered Chronic Condition; (2) Recommended by your Doctor in a Plan of Care; and (3) Care which is provided while your coverage under the Policy is in force.

No new Waiting Period is required for recurring Adult Day Care visits due to the same or related cause that are separated by less than six months.

PLAN OF CARE

Before any benefits are payable, we must receive and approve a Plan of Care. We have the right to request and review a subsequent Plan of Care as often as we deem necessary. We also reserve the right to evaluate medical information against professional standards of care and pay any benefit accordingly. We may also suggest alternative care when deemed appropriate, in accordance with the Case Management Provision.

CASE MANAGEMENT PROVISION

On a case by case basis, we may, at our option, and with the concurrence of you and your Doctor, recommend and pay for Necessary Care not otherwise covered by the policy. However, we will not pay an amount greater than would be otherwise payable under the policy. Any amount paid will be applied to reduce the daily benefit and lifetime maximum as determined by us.

NURSING HOME WAIVER OF PREMIUM

Premiums will be waived for periods of Nursing Home confinement for which benefits are payable.

RETURN OF PREMIUMS OPTION

The return of premiums option is available only at the time of initial enrollment. The Schedule of Insurance shows if you have elected this optional provision.

If coverage is in force at the time of your death and benefits payable during the lifetime of this plan do not exceed the total premiums paid for your coverage, a return of premiums will be issued. The return of premiums will equal the total amount of premiums paid for your coverage, less any benefits payable during the lifetime of this plan.

The return of premiums will be paid as though it were an amount payable under the Payment of Claims Provision.

**EXCLUSIONS AND LIMITATIONS**

EXCLUSIONS

*The policy does not pay benefits for Chronic Conditions caused by or resulting from:* (1) alcohol or drug addiction; (2) mental disease or disorder (except for Alzheimer's Disease and (SDAT) Senile Dementia of the Alzheimer's Type); (3) attempted suicide or intentionally self-inflicted injury; or (4) war, declared or undeclared, or any act thereof.

The Policy does not cover: (1) confinements in government facilities unless a charge is made for which the Insured Person is obligated to pay; (2) any Nursing Home confinement, Home Health Care visit, or Adult Day Care visit for which no charge would be made to the Insured Person in the absence of insurance; or (3) Nursing Home confinements, Home Health Care visits, or Adult Day Care visits outside of the United States.

PRE-EXISTING CONDITION LIMITATION

The Policy does not pay benefits for any Nursing Home confinement, period of Home Health Care, or period of Adult Day Care which begins during the first six months following the Effective Date of your coverage if it is due to a Pre-existing Condition.

MULTIPLE COVERAGE

No person may be covered under more than one Allstate Life Insurance Company policy providing Nursing Home, Home Health Care or Adult Day Care benefits. If any person is insured under more than one such policy, benefits will be payable only under the policy with the latest Effective Date.

However, if within 31 days of the latest Effective Date shown, you have changed to coverage under that policy from any other Allstate Life Insurance Company policy providing Nursing Home, Home Health Care, or Adult Day Care benefits, the following will apply:

Benefits for any care or services not covered due to the Pre-existing Condition Limitation will be determined as if *coverage under the prior policy was still in effect.* But no benefits will be paid under the later policy for any day of stay or visit for which a benefit is payable for coverage under the prior policy.

## TERMINATION

TERMINATION OF INSURED PERSON'S COVERAGE

Subject to the Grace Period, your coverage will terminate on the date: (1) the required premium is not paid when due; or (2) both Insured Persons, if living, otherwise the surviving Insured Person notifies Allstate or the Policyholder in writing of the desire to terminate the insurance.

Termination of coverage will not affect any claim for a period of Nursing Home confinement that began while insurance was in force. Any claim for Home Health Care or Adult Day Care will not include expenses incurred after coverage has stopped.

If we are notified of the death of either Insured Person, coverage will continue for the surviving Insured. The rates will be adjusted to reflect the individual rate for the surviving Insured.

TERMINATION OF THE GROUP MASTER POLICY

In the event that the policyholder terminates the group master policy while you are an Insured Person, your coverage will be automatically continued under another policy providing identical coverage for identical premium rates. Your original effective date will be maintained and full credit will be given for premiums paid and waiting periods met in part or in full under this plan.

## AUTOMATIC BENEFIT INCREASES

Each year, on the anniversary of the coverage Effective Date, there will be an automatic increase in the daily benefits. This annual increase will be equal to seven percent of the original daily benefit amounts.

## GENERAL PROVISIONS

ENTIRE CONTRACT

The entire contract of insurance is:

1. the policy (including endorsements and attached papers, if any);
2. the application of the policyholder; and
3. the Insured Person's enrollment form.

This certificate:

1. is furnished in accord with and subject to the terms of the Policy; and
2. outlines the insurance provided under the Policy and is subject to all the terms and conditions of the Policy.

INCONTESTABILITY

In the absence of fraud, the validity of the insurance on any Insured Person shall not be contested, except for nonpayment of premiums, after it has been in force for two years during the lifetime of such Insured Person. No statement made by an Insured Person shall be used in a contest unless: (1) it is contained in a written request for insurance signed by the Insured Person; and (2) a copy of such request is or has been furnished to the Insured Person.

MISSTATEMENT OF AGE

If the age of any Insured Person is misstated, appropriate adjustment in the premium will be made if necessary. However, if the person's age at the time of enrollment would have made him/her ineligible for coverage under the Policy, insurance for such person will be considered void from the Effective Date and we will refund any excess premiums paid. The Insured will be liable for any unearned benefits which may have been paid.

HOW TO REPORT A CLAIM

Written notice of claim must be given to us at our Home Office within six months after the occurrence of any loss covered by the Policy, or as soon as is reasonably possible.

Notice given by or on behalf of the claimant must include information sufficient to identify the Insured Person.

CLAIM FORMS

Once we receive written notice of a claim, we will send the claimant forms for filing proof of loss. If these forms are not sent to the claimant within 15 days after we receive notice, the claimant will meet the proof of loss requirements by giving us written proof of the occurrence, nature and extent of the loss within the time stated in the Proof of Loss provision.

PROOF OF LOSS

Written proof of loss must be given to us at our Home Office within nine months after the date of loss. If this is not reasonably possible, we may not deny the claim if the proof is furnished as soon as reasonably possible, but not later than one year from the time required unless the claimant was legally incapable of doing so.

PAYMENT OF CLAIMS

Benefits payable for loss under the Policy will be paid upon receipt of due written proof of loss. Unless otherwise requested in writing by you, benefits will be paid as follows: To the person for whom the benefit is payable; otherwise to that person's spouse if living; otherwise to the person's living lawful children, including stepchildren and adopted children, if any; otherwise to the Insured Person's estate. If any benefit under the Policy is payable to an Insured Person's estate or to a person who is a minor or is otherwise not competent to give a valid release, we may pay part of the benefit up to $1,000 to any person appearing to us to be equitably entitled thereto. Any such payment made in good faith shall relieve us of any liability to the extent of such payment.

PAYMENT OF PREMIUM - GRACE PERIOD

All Premiums shall be paid by the Insureds at the Home Office of Allstate on or prior to the day they are due. If a Premium is not paid when due, the insurance shall be in default. However, a Grace Period of 31 days will be granted for the payment of every Premium after the first payment and during the Grace Period the insurance will continue in force. If a Premium remains unpaid at the expiration of the Grace Period, all coverage on the Insured Persons shall terminate as of the expiration date of the Grace Period and the Insureds will be liable for all Premium due for any time the insurance was in force, including the Grace Period.

EXAMINATION

At any time during a claim, we shall have the right to have the Insured Person examined by a Doctor we choose as often as reasonably necessary in our determination of eligibility for benefits. This examination will be at our expense.

ASSIGNMENT

We are not bound by an assignment of interest under the Policy until it is filed at our Home Office. We do not assume any responsibility for the validity or extent of an assignment. If more than one assignment is filed with Allstate with respect to benefits payable for the same Nursing Home confinement, period of Home Health Care, or period of Adult Day Care, Allstate shall have the sole right to determine how the benefits shall be appropriated. The interest of any assignee is subject to this right.

LEGAL ACTION

Suit for benefits under the Policy cannot be brought sooner than 60 days after we receive written Proof Of Loss as required. No such action may be taken after three years from the time written Proof Of Loss is required.

CONFORMITY WITH STATE LAWS

Any provision of the Policy which, on its effective date, is in conflict with any law to which it is subject, is amended to conform to the minimum requirements of such law.

Robert S. Bailey
Secretary

President